Samuel SOLIZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00058–CR.

Court of Appeals of Texas, San Antonio.

Dec. 10, 1997.

Rehearing Overruled Jan. 9, 1998.

Giancarlo Nisimblat, Nisimblat & Basart, P.L.L.C., Alice, for Appellant.

Joe Frank Garza, District Attorney, Alice, for Appellee.

Before HARDBERGER, C.J., and LOPEZ and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

This is an appeal from a conviction for aggravated robbery. The jury assessed punishment at ten years probation.

### FACTS

At about 9:20 p.m. on November 28, 1995, two men entered an Alice convenience store, pushed a gun into the ribs of Cristina Rodriguez, the clerk, and took $407.00. When the police arrived at the scene, the only information Rodriguez could relate was that the two men were Hispanic and were wearing bandannas and camouflage clothing. The following day, Rodriguez told the police that she had seen the robbers before, but could not recall their names.

Because of her poor recall, Rodriguez agreed to be hypnotized by Sgt. Perez, an

investigator for the Narcotics Division of the Alice Police Department. During the session, Rodriguez was able to recall that the taller of the two robbers had been in the store earlier to buy beer. She also recalled that the gunman smelled like tar, had tar under his fingernails, had a scar on his face, and worked at a roofing company. Rodriguez also provided enough descriptive information for a sketch of the gunman to be drawn. Using the sketch, Sgt. Wymore, the assistant investigator in the case, prepared a six photo line-up. Rodriguez identified Samuel Soliz in the line-up as the gunman and stated that the other robber was Soliz's brother.[1] The police never recovered any physical evidence.

At trial, Soliz presented four alibi witnesses. Soliz's boss, who owns a diner, testified that although Soliz punched out at 8:00 p.m., it was common for the employees to stay at the diner to eat. He also testified that Soliz was a busboy/dishwasher, so it was impossible for Soliz to have tar on his hands. Soliz's mother testified that he arrived at her house at 9:05 p.m. and did not leave until the next morning. Soliz's wife testified that, because Soliz ate at the diner after his shift, she picked him up from work at 8:45 p.m. She then took Soliz to his mother's house, where they both spent the night. A friend of Soliz testified that she talked to Soliz at his mother's house at 9:40 p.m.

### HYPNOSIS

In his first point of error, Soliz argues that the trial court erred in failing to suppress Rodriguez's hypnotically enhanced testimony and all evidence derived from the session. In his second point of error, Soliz argues that the trial court erred in failing to disqualify

Sgt. Perez from testifying based on the fact that he was unlicensed at the time he hypnotized Rodriguez. Because these points of error are related, we will address them together.

■■■ The proponent of hypnotically refreshed testimony must demonstrate, by clear and convincing evidence, that the testimony is trustworthy. *Zani v. State*, 758 S.W.2d 233, 243 (Tex.Crim.App.1988). If, after consideration of the totality of the circumstances, the trial court finds by clear and convincing evidence that hypnosis neither rendered the witness's post-hypnotic memory untrustworthy nor substantially impaired the ability of the opponent to fairly test the witness's recall by cross-examination, he may admit the testimony. *Id.* at 244. The trial court must be alert to the four-prong dangers of hypnosis: hypersuggestibility, confabulation, loss of critical judgment, and memory cementing.[2] *Id.* In *Zani*, the Court of Criminal Appeals listed ten factors courts should use to assess the likelihood of whether these dangers occurred. The ten factors are discussed below.

**1. The level of training in the clinical uses and forensic applications of hypnosis by the person performing the hypnosis.** At the time Sgt. Perez hypnotized Rodriguez, he was not licensed or certified by the State to perform hypnosis. He had, however, completed 80 hours of hypnosis training at a community college and he had conducted four other sessions. Sgt. Perez had never heard of the ten factors in *Zani* and testified that the only danger in hypnosis is confabulation. He also had never heard of hypersuggestibility or loss of critical judgment and agreed that he provided feedback to his hyp-

---

1. A line-up, which included three of Samuel Soliz's brothers, was prepared for the second suspect. Rodriguez identified Daniel Soliz in this second line-up as the second robber. The two brothers were tried and convicted together. However, Daniel Soliz voluntarily withdrew his appeal due to an untimely notice of appeal.

2. *Hypersuggestibility:* the hypnotized is in a state of increased suggestibility in which her disassociated attention is constantly sensitive to and responsive to cues from the hypnotist. *Zani v. State*, 767 S.W.2d 825, 835 (Tex.App.—Texarkana 1989, pet. ref'd).

*Confabulation:* the hypnotized creates memory perceptions in an unconscious effort to please the hypnotist and believes the fabricated memories are real. *Id.* at 836.

*Loss of Critical Judgment:* the hypnotized loses the ability to make a mental evaluation of her ideas, images, and feelings. *Id.* at 837.

*Memory Cementing:* the more the hypnotized goes over the memory in her mind, the more the hypnotized becomes convinced it is an accurate remembrance. *Id.*

nosis subjects in order to cement their memory.

**2. The hypnotist's independence from law enforcement investigators, prosecution, and defense.** Sgt. Perez worked for the Alice Police Department, albeit in a separate department from the one handling the aggravated robbery. Sgt. Perez testified that he had no other involvement in the case.

**3. The existence of a record of any information given or known by the hypnotist concerning the case prior to the hypnosis session.** No record was made of Sgt. Perez's knowledge about the case. Sgt. Perez, Sgt. Soliz, lead investigator for the case, and Sgt. Wymore testified that Sgt. Perez knew only Rodriguez's name, the location and date of the offense, and the type of offense.

**4. The existence of a written or recorded account of the facts as the hypnosis subject remembers them prior to undergoing hypnosis.** Sgt. Wymore testified that he wrote down the information Rodriguez knew prior to the hypnosis, but the State did not introduce this report into evidence.

**5. The creation of recordings of all contacts between the hypnotist and the subject.** Sgt. Perez taped the hypnosis session; however, the audio portion of the tape was of such poor quality that the State stipulated that it was of no use. Also, Sgt. Perez focused the camera solely on Rodriguez, so that the gestures and actions of the other persons present could not be seen. This mistake rendered the entire video tape useless.

**6. The presence of persons other than the hypnotist and the subject during any phase of the hypnosis session, as well as the location of the session.** Sgt. Soliz, Sgt. Wymore, and Rodriguez's sister were present for the session. The session took place at the police department in the narcotics task force office.

**7. The appropriateness of the induction and memory retrieval techniques used.** Because the session was not properly taped, we have no basis for evaluating the appropriateness of the induction and memory retrieval technique used.

**8. The appropriateness of using hypnosis on the kind of memory loss involved.** There was no testimony or argument on this factor.

**9. The existence of any evidence to corroborate the hypnotically-enhanced testimony.** When asked whether the State had any evidence to corroborate the hypnotically enhanced testimony and identification, the District Attorney responded, "Okay. Yes, I do. Very little, but I do." The record does not indicate what that corroborating evidence was.

**10. The presence or absence of overt or subtle cuing or suggestion of answers during the hypnotic session.** Because the tape was not usable, the only evidence of this factor consisted of witness testimony. Sgt. Soliz and Sgt. Wymore testified that the Alice Police Department did not have a suspect before the hypnotic session. Without a suspect, it was impossible for them to make any overt or subtle suggestions of answers. Sgt. Perez also testified that Sgt. Soliz and Sgt. Wymore did not make any comments or gestures during the session.

■ When we review a trial court's ruling, our standard of review is determined by which judicial actor is in a better position to decide the issue. *Guzman v. State,* 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997). The appellate courts should afford almost total deference to the trial court's ruling on mixed questions of law and fact if the resolution of those ultimate questions turn on an evaluation of credibility and demeanor. *Id.* Otherwise, the appellate court may review *de novo* mixed questions of law and fact not falling within this category. *Id.*

■ This case requires a *de novo* standard of review because it involves mixed questions of law and fact and because the ten *Zani* factors are not dependent on an evaluation of the credibility and demeanor of witnesses. The evaluating court is only required to ascertain if the proper safeguards were used with the assistance of the *Zani* factors. The trial court is not in a better position to make this evaluation than this court.

■ We find that the State did not meet its burden of proving, by clear and convinc-

ing evidence, that the hypnotically refreshed testimony was trustworthy. The most alarming fact was that Sgt. Perez was not familiar with the factors in *Zani* and did not know three of the four dangers of hypnosis. Without this knowledge, it was impossible for Sgt. Perez to implement the proper safeguards.

Sgt. Perez's lack of knowledge rendered the hypnotic session unreliable. Sgt. Perez did not know that he should only hypnotize witnesses if he was independent from the investigating agency. He also did not know that the investigators should not be present at the session. Because Sgt. Perez did not know why he had to video tape hypnosis sessions, he did not correctly video tape the session with Rodriguez. This video tape should be the main vehicle for the evaluating court to ascertain whether the hypnotist or another person influenced the subject. But Sgt. Perez did not place microphones on any of the people at the session, including himself and the two investigators. We do not even know if the investigators spoke or made any gestures because the video camera was focused solely on Rodriguez.

■ Because Sgt. Perez did not safeguard against three of the four dangers of hypnosis, Rodriguez's post-hypnotic memory is untrustworthy. Furthermore, Sgt. Perez was not a licensed hypnotist at the time he performed the hypnosis on Rodriguez. Section 415.036(a) of the Texas Government Code provides "[a] peace officer may not use any hypnotic interview technique unless the officer has completed a training course approved by the commission and passed an examination that is designed to test the officer's knowledge of investigative hypnosis and that is administered by the commission." TEX. GOV'T CODE ANN. § 415.036(a) (Vernon 1990). Sgt. Perez testified that, although he had completed a hypnosis course and had passed an exam when he completed that course, he was not licensed by the State of Texas as a hypnotist. Therefore, Sgt. Perez conducted the hypnosis session on Rodriguez in violation of section 415.036(a). The trial court should have suppressed Sgt. Perez's testimony regarding the hypnosis, Rodriguez's post-

hypnotic testimony and all evidence derived from the hypnotic session.

These errors substantially affected Soliz's right to a fair trial and were not harmless. TEX.R.APP. P. 44.2(b). We affirm points of error one and two.

## SUFFICIENCY OF THE EVIDENCE

However, we cannot reverse and remand for a new trial without first considering Soliz's third point of error: without the evidence derived from the hypnotic session, the evidence was legally insufficient to sustain the verdict, and the trial court therefore erred by not granting his motion for a directed verdict. We consider this ground because the Double Jeopardy Clause precludes a second trial if a reviewing court determines that the evidence was insufficient to sustain a verdict. *Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978); *see Dunn v. State*, 721 S.W.2d 325, 327 (Tex.Crim.App. 1986) (holding that challenge to sufficiency of evidence should be considered before disposing of case even though reversal may be based on another ground of error).

■ The standard for review applicable to a motion for directed verdict is the same as that used in reviewing the legal sufficiency of the evidence. *Havard v. State*, 800 S.W.2d 195, 199 (Tex.Crim.App.1989). The reviewing court must consider all the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found beyond a reasonable doubt all the elements of the offense. *Santellan v. State*, 939 S.W.2d 155, 160 (Tex.Crim.App.1997). The court must review all the evidence, whether properly or improperly admitted. *Lockhart v. Nelson*, 488 U.S. 33, 41–42, 109 S.Ct. 285, 291–92, 102 L.Ed.2d 265 (1988). For example, in *Dunn*, the Court of Criminal Appeals first held that the evidence was sufficient to support the jury's verdict by considering both the facts in Dunn's confession and the facts the State proved at trial. *See Dunn*, 721 S.W.2d at 334–35. Then, the Court reversed and remanded the case because the confession was inadmissible. *Id.* at 342. Therefore, we cannot exclude the evidence derived from the hypnotic session in

conducting our sufficiency of the evidence review.

A person is guilty of aggravated robbery if, while in the course of committing theft, "and with intent to obtain or maintain control of the property, he ... intentionally or knowingly threatens or places another in fear of imminent bodily injury or death" and uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 1994). Theft is defined as unlawfully appropriating property with intent to deprive the owner of property without the owner's consent. TEX. PENAL CODE ANN. § 31.03(a), (b)(1) (Vernon 1994 & Supp.1998).

■ Rodriguez testified that Soliz pointed a gun at her, putting Rodriguez in fear for her life, and gave her a note that said, "Put the money in the bag." Rodriguez testified that she put all the cash register bills in the bag, and then Soliz left. Rodriguez identified Soliz in court as the gunman. We find that this evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that Soliz was guilty of aggravated robbery. Soliz's third point of error is overruled.

We affirm Soliz's first and second points of error and reverse and remand to the trial court for further proceedings in accordance with this opinion.