COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 


 
 
  
 THE STATE OF
 TEXAS,
  
                             Appellant,
  
 v.
  
 MATTHEW MEDRANO,
  
                             Appellee.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  ' 
  
 
 
  
  
                 No. 08-97-00492-CR
  
 Appeal from the
  
 41st District Court
  
 of El Paso County, Texas 
  
 (TC# 970D07338)
  
 
 


 

O P I N I O N

 

This State=s appeal involves the trial court=s exclusion of hypnotically-enhanced
testimony from the only eyewitness in a capital murder case.  We affirm the trial court=s ruling and remand for further
proceedings consistent with this opinion.








Upon our original consideration of
this State=s appeal, we determined that we had
no jurisdiction to consider the trial court=s exclusion of evidence, relying upon
the authority of State v. Roberts, 940 S.W.2d 655, 658 (Tex. Crim. App.
1996).  See State v. Medrano, 987
S.W.2d 600, 603-04 (Tex. App.--El Paso 1999). 
The Court of Criminal Appeals, upon petition by the State, reversed our
decision, overruled Roberts, and remanded the appeal for consideration
on the merits.  State v. Medrano, 67
S.W.3d 892, 903 (Tex. Crim. App. 2002). 
We therefore address the merits of the State=s appeal at this time.

Facts

On October 5, 1996, pizza delivery man
Benton Smith was shot and killed at 221 South Carolina Street, El Paso, Texas,
apparently in the course of a robbery. 
At the time of the shooting, J.E., a fourteen-year-old girl, was in the
front yard of her home down the street. 
J.E. gave a statement to the police about the events of that night,
including a description of the shooter and the car he rode in.

On October 7, 1996, J.E. was
hypnotized by Sergeant Pete Ocegueda of the El Paso Police Department.  On October 14, 1996, J.E. was unable to identify
the shooter from two photographic lineups. 
On October 16, 1996, J.E. was shown three more photographic
lineups.  From one of these, she
identified defendant Medrano.

Medrano challenged both the
photographic lineup identification and any in-court identification by J.E. on
the bases that:

(1) The
photographic identification procedure used was so impermissibly suggestive that
it induced the witness to identify Medrano contrary to his rights under the due
process provisions of the U.S. Constitution and Article I, sec. 19 of the Texas
Constitution.

 








(2) Any
in-court identification following the hypnosis session, and photographic
identification, would be unduly suggestive and unreliable, and inadmissable
pursuant to Texas Rule of Criminal Evidence 403; Zani v. State[1];
the 6th Amendment to the U.S. Constitution; the due process clause of the 14th
Amendment of the U.S. Constitution; the due course of law provisions under
Article I, sec. 13 of the Texas Constitution; the right to trial by jury under
Article I, sec. 15 of the Texas Constitution and due course of law under
Article I, sec. 19 of the Texas Constitution.

 

(3) Any
in-court identification procedure would be the result of the impermissibly
suggestive photographic identification procedure and the post-hypnotic recall
gave rise to a very substantial likelihood of irreparable misidentification of
Medrano at trial; the probative testimony is clearly outweighed by its
prejudicial effect, relying upon Tex. R.
Crim. Evid. 403. 

 

Following a hearing, the trial court granted the motions,
stating in her written order:

On the 3rd and 20th day of October, 1997, came on to
be heard the Defendant=s Motions to Suppress Photographic Identification and
In-Court Identification.  After
considering the evidence and argument of counsel and for the reasons stated on
the record October 21, 1997, the Court hereby grants said Motions.  The Court also finds said identification was
obtained in violation of the 4th, 5th, 6th and 14th Amendment of the United
States Constitution and Article I, Sections 9, 10, 13 and 19 of the Texas
Constitution.

 

The trial court=s reasoning, referred to in her order and set out in
open court, was:

 

The Court
having reviewed what appears to be the only case on hypnotically-enhanced
testimony, the Zani case . . . . 
After reviewing the standards in that case, the Court is now going to
grant the motion to suppress the in-court identification based upon the Zani
standards.  

 

I have
weighed the factors in the case and believe that the in-court identification
should be suppressed.  

 

In
weighing the factors for admissibility as set out in [the Zani] case,
there are two compelling reasons for the decision to hold the
hypnotically-enhanced eyewitness testimony as inadmissable in this case.

 








The most
important is the lack of any evidence to corroborate that testimony.  In Zani, fingerprints were found at
the scene of the defendant who was identified by the hypnotically-enhanced
testimony.

 

The
hypnosis session here occurred one day after the incident with no explanation
from law enforcement as to why and to what extent there was a memory loss.

 

In Zani,
the hypnosis session occurred 13 years after the incident.  The defendant had left the jurisdiction and
was not apprehended for 13 years, and at that time, the young eyewitness was
hypnotized to see if there was any recall for the identification.  The identification in that case did coincide
with the fingerprints.  They were one in
the same.

 

The State urges that because the
trial court relied upon the factors outlined in Zani v. State, 758
S.W.2d 233, 243-44 (Tex. Crim. App. 1988) to exclude J.E.=s identification, and because Zani
was decided under the abandoned Frye Ageneral acceptance@ test for admissibility of scientific
evidence in criminal cases, the exclusion was error.  The State urges us to reverse the trial court=s decision, and using the Kelly[2]
test, hold the hypnotically-enhanced evidence admissible.  Alternatively, the State urges us to remand
the case with instructions to the trial court to assay the admissibility of the
evidence under the Kelly standard.

Standard
of review

The only issue before us today is
whether the trial court applied the wrong standard in excluding evidence.  We review de novo the issue of whether
the trial court applied the correct law. 
Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).








The
Zani standard

In Zani, the Court of Criminal
Appeals set out to determine the admissibility of hypnotically-enhanced
testimony.  Zani, 758 S.W.2d at
243.  The Court declined to adopt an
exclusionary rule prohibiting the use of such evidence in every case, but set
up stringent requirements for admissibility: 
A[B]ecause of the uncertainties
inherent in posthypnotic testimony it is appropriate to require the proponent
of such testimony to demonstrate to the satisfaction of the trial court, outside
the jury=s presence, by clear and convincing
evidence, that such testimony is trustworthy.@ 
Id.  The court cautioned
trial courts to be alert for four pitfalls inherent in hypnosis:  hypersuggestibility, loss of critical
judgment, confabulation, and memory cementing.[3]  Id. 
It then listed a number of factors the trial court should scrutinize in
determining trustworthiness, including but not limited to:

(1)  the level of training in the clinical uses
and forensic applications of hypnosis by the person performing the hypnosis; 

 

(2)  the hypnotist=s
independence from law enforcement investigators, prosecution, and defense; 

 








(3)  the existence of a record of any information
given or known by the hypnotist concerning the case prior to the hypnosis
session; 

 

(4)  the existence of a written or recorded
account of the facts as the hypnosis subject remembers them prior to undergoing
hypnosis; 

 

(5)  the creation of recordings of all contacts
between the hypnotist and the subject; the presence of persons other than the
hypnotist and the subject during any phase of the hypnosis session, as well as
the location of the session; 

 

(6)  the appropriateness of the induction and
memory retrieval techniques used; the appropriateness of using hypnosis for the
kind of memory loss involved;  

 

(7)  the existence of any evidence to corroborate
the hypnotically-enhanced testimony;

 

(8) the
presence or absence of overt or subtle cuing or suggestion of answers during
the hypnotic session.  Zani, 758
S.W.2d at 243-44.

 

After considering the totality of the circumstances, Zani instructs
that if the trial court finds by clear and convincing evidence that hypnosis
neither rendered the witness=s posthypnotic memory untrustworthy nor substantially
impaired the ability of the opponent fairly to test the witness=s recall by cross-examination, the
evidence should be admitted.  Id.

Zani
and Kelly








The State=s appeal rests on the premise that
when the Court of Criminal Appeals overruled the Frye Ageneral acceptance@ test[4]
for admissibility of scientific evidence in Kelly v. State, 824 S.W.2d
568, 572-73 (Tex. Crim. App. 1992), it also impliedly overruled Zani.  Thus, the State argues, the trial court
committed error in relying upon Zani=s AFrye-based@ analysis to exclude J.E.=s testimony.[5]  We disagree for the following reasons. 








First, Zani is a highly
specific, detailed discussion of a narrowly defined question: the admissibility
of hypnotically-enhanced testimony in a criminal prosecution.  It recognizes the peculiarly hybrid quality
of this evidence; hypnotically-enhanced testimony is neither scientific
evidence presented by an expert, nor is it simply factual evidence presented by
a witness.  Rather, as the Zani court
acknowledged, Atestimony that is dependent upon
hypnosis cannot be logically dissociated from the underlying scientific
technique@ and should not be treated as purely
an issue of weight and credibility.  Zani,
758 S.W.2d at 241.  Recognizing that
this sort of evidence is peculiarly subject to taint by many subconscious
factors, nevertheless the court declined to adopt a per se exclusionary
rule.  Zani then set up its own
particularized set of demanding factors to be applied in just these cases.  In doing so, it relies not so much on Frye
as on a Colorado opinion that had earlier tackled the problem.  See Zani, 758 S.W.2d at 243-44
(quoting People v. Romero, 745 P.2d 1003, 1021 (Colo. 1987)).  Although Zani certainly recognizes Frye
(properly so, as Frye was then the benchmark), the framework it
developed is neither Frye nor Kelly, but simply Zani.

Second, Kelly itself cites and
relies on Zani, adopting the latter=s heightened burden of persuasion for
all proffers of novel scientific evidence under Tex. R. Crim. Evid. 702. 
Kelly, 824 S.W.2d at 573 (AAlthough Zani was a pre-rules
case, we believe that its reasoning on this issue remains persuasive.@). 
This approving language not only fails to support the State=s argument that Kelly impliedly
overrules Zani, it strongly suggests the opposite, that Zani remains
the law.








Finally, in several post-Kelly
opinions, courts of appeals have used Zani=s analysis to determine the admissibility of
post-hypnotic testimony, without discussion of any impact Kelly might
have upon its detailed framework for assessing this troublesome area.  Perhaps more importantly, none of these cases
have been criticized or overturned by the Court of Criminal Appeals.  See Sanchez v. State, 1999 WL 644710
(Tex. App.--Austin 1999, pet. ref=d) (not designated for publication); Hughes
v. State, 7 S.W.3d 880, 882 (Tex. App.--Amarillo 1999, no pet.); Fitts
v. State, 1998 WL 17741, at *3-4 (Tex. App.--Amarillo 1998, pet. ref=d) (not designated for publication); Soliz
v. State, 961 S.W.2d 545 (Tex. App.--San Antonio 1997, pet. ref=d).[6]  These courts did not find the new Kelly standard
to have vitiated Zani=s
authority, nor do we.

For these reasons, we conclude the
trial court correctly applied Zani in ruling upon the admissibility of
J.E.=s hypnotically-enhanced
testimony.  The State does not challenge
the trial court=s application of the Zani analysis to the facts here,
and we therefore make no comment on that issue.

Conclusion

The trial court=s order excluding J.E.=s identifications of Medrano is
affirmed.  The case is remanded for
further proceedings consistent with this opinion.

 

                                                                        


SUSAN
LARSEN, Justice

September 19, 2002

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Publish)

 











[1]758
S.W.2d 233, 239 (Tex. Crim. App. 1988).





[2]Kelly
v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).





[3]Hypersuggestibility
refers to the hypnotized person=s
state of increased suggestibility in which her disassociated attention is
constantly sensitive and responsive to cues from the hypnotist.  Loss of critical judgment means the
hypnotized person=s
inability to make a mental evaluation of her ideas, images, and feelings.  Confabulation is a phenomenon where the
hypnotized person creates memory perceptions in an unconscious effort to please
the hypnotist and believes the fabricated memories are real.  Memory cementing means the hypnotized person
becomes convinced the confabulation is an accurate memory.  See Zani v. State, 767 S.W.2d  825, 835-36 (Tex. App.--Texarkana 1989, pet.
ref=d).





[4]Frye
v. United States, 293 F. 1013 (D. C. Cir. 1923).





[5]The
Frye test required that A>while courts will go a long way in
admitting expert testimony deduced from a well recognized scientific principle
or discovery, the thing from which the deduction is made must be sufficiently
established to have gained general acceptance in the particular field in which
it belongs.=@ 
Zani, 758 S.W.2d at 239 (quoting Frye, 293 F. at
1014).  This is commonly known as the Ageneral acceptance@ test. 
Kelly summarized its new test thusly: A[U]nder
Rule 702 the proponent of novel scientific evidence must prove to the trial
court, by clear and convincing evidence and outside the presence of the jury,
that the proffered evidence is relevant. 
If the trial court is so persuaded, then the evidence should be admitted
for the jury=s
consideration, unless the trial court determines that the probative value of
the evidence is outweighed by some factor identified in Rule 403.@ 
Kelly, 824 S.W.2d at 573.





[6]Neither
Sanchez nor Fitts has been designated for publication.  We do not cite these cases as authority, but
as illustrative of our point that post-Kelly courts have relied upon Zani
without any suggestion from the Court of Criminal Appeals that they applied
an outdated standard.