The STATE of Texas, Appellant,

v.

Matthew MEDRANO, Appellee.

No. 08–97–00492–CR.

Court of Appeals of Texas,
El Paso.

Sept. 19, 2002.

Jaime E. Esparza, District Attorney, El Paso, for State.

Luis E. Islas, El Paso, for Appellee.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

This State's appeal involves the trial court's exclusion of hypnotically-enhanced testimony from the only eyewitness in a capital murder case. We affirm the trial court's ruling and remand for further proceedings consistent with this opinion.

Upon our original consideration of this State's appeal, we determined that we had no jurisdiction to consider the trial court's exclusion of evidence, relying upon the authority of *State v. Roberts,* 940 S.W.2d 655, 658 (Tex.Crim.App.1996). *See State v. Medrano,* 987 S.W.2d 600, 603–04 (Tex. App.-El Paso 1999). The Court of Criminal Appeals, upon petition by the State, reversed our decision, overruled *Roberts,* and remanded the appeal for consideration on the merits. *State v. Medrano,* 67 S.W.3d 892, 903 (Tex.Crim.App.2002). We therefore address the merits of the State's appeal at this time.

### Facts

On October 5, 1996, pizza delivery man Benton Smith was shot and killed at 221 South Carolina Street, El Paso, Texas, apparently in the course of a robbery. At the time of the shooting, J.E., a fourteen-year-old girl, was in the front yard of her home down the street. J.E. gave a statement to the police about the events of that night, including a description of the shooter and the car he rode in.

On October 7, 1996, J.E. was hypnotized by Sergeant Pete Ocegueda of the El Paso Police Department. On October 14, 1996, J.E. was unable to identify the shooter from two photographic lineups. On October 16, 1996, J.E. was shown three more photographic lineups. From one of these, she identified defendant Medrano.

Medrano challenged both the photographic lineup identification and any in-court identification by J.E. on the bases that:

(1) The photographic identification procedure used was so impermissibly suggestive that it induced the witness to identify Medrano contrary to his rights under the due process provisions of the U.S. Constitution and Article I, sec. 19 of the Texas Constitution.

(2) Any in-court identification following the hypnosis session, and photographic identification, would be unduly suggestive and unreliable, and inadmissable pursuant to Texas Rule of Criminal Evidence 403; *Zani v. State*[1]; the 6th Amendment to the U.S. Constitution; the due process clause of the 14th Amendment of the U.S. Constitution; the due course of law provisions under Article I, sec. 13 of the Texas Constitution; the right to trial by jury under Article I, sec. 15 of the Texas Constitution and due course of law under Article I, sec. 19 of the Texas Constitution.

(3) Any in-court identification procedure would be the result of the impermissibly suggestive photographic identification procedure and the post-hypnotic recall gave rise to a very substantial likelihood of irreparable misidentification of Medrano at trial; the probative testimony is clearly outweighed by its prejudicial effect, relying upon TEX.R.CRIM. EVID. 403.

Following a hearing, the trial court granted the motions, stating in her written order:

On the 3rd and 20th day of October, 1997, came on to be heard the Defendant's Motions to Suppress Photographic Identification and In–Court Identification. After considering the evidence

---

1. 758 S.W.2d 233, 239 (Tex.Crim.App.1988).

and argument of counsel and for the reasons stated on the record October 21, 1997, the Court hereby grants said Motions. The Court also finds said identification was obtained in violation of the 4th, 5th, 6th and 14th Amendment of the United States Constitution and Article I, Sections 9, 10, 13 and 19 of the Texas Constitution.

The trial court's reasoning, referred to in her order and set out in open court, was:

> The Court having reviewed what appears to be the only case on hypnotically-enhanced testimony, the *Zani* case.... After reviewing the standards in that case, the Court is now going to grant the motion to suppress the in-court identification based upon the *Zani* standards.
>
> I have weighed the factors in the case and believe that the in-court identification should be suppressed.
>
> In weighing the factors for admissibility as set out in [the *Zani*] case, there are two compelling reasons for the decision to hold the hypnotically-enhanced eyewitness testimony as inadmissable in this case.
>
> The most important is the lack of any evidence to corroborate that testimony. In *Zani*, fingerprints were found at the scene of the defendant who was identified by the hypnotically-enhanced testimony.
>
> The hypnosis session here occurred one day after the incident with no explanation from law enforcement as to why and to what extent there was a memory loss. In *Zani*, the hypnosis session occurred 13 years after the incident. The defendant had left the jurisdiction and was not apprehended for 13 years, and at that time, the young eyewitness was hypnotized to see if there was any recall

for the identification. The identification in that case did coincide with the fingerprints. They were one in the same.

The State urges that because the trial court relied upon the factors outlined in *Zani v. State*, 758 S.W.2d 233, 243–44 (Tex.Crim.App.1988) to exclude J.E.'s identification, and because *Zani* was decided under the abandoned *Frye* "general acceptance" test for admissibility of scientific evidence in criminal cases, the exclusion was error. The State urges us to reverse the trial court's decision, and using the *Kelly*[2] test, hold the hypnotically-enhanced evidence admissible. Alternatively, the State urges us to remand the case with instructions to the trial court to assay the admissibility of the evidence under the *Kelly* standard.

### Standard of review

The only issue before us today is whether the trial court applied the wrong standard in excluding evidence. We review *de novo* the issue of whether the trial court applied the correct law. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997).

### The *Zani* standard

In *Zani*, the Court of Criminal Appeals set out to determine the admissibility of hypnotically-enhanced testimony. *Zani*, 758 S.W.2d at 243. The Court declined to adopt an exclusionary rule prohibiting the use of such evidence in every case, but set up stringent requirements for admissibility: "[B]ecause of the uncertainties inherent in posthypnotic testimony it is appropriate to require the proponent of such testimony to demonstrate to the satisfaction of the trial court, outside the jury's presence, by clear and convincing evidence, that such testimony is trustworthy." *Id.* The court cautioned trial courts to be

---

**2.** *Kelly v. State,* 824 S.W.2d 568, 573 (Tex.    Crim.App.1992).

alert for four pitfalls inherent in hypnosis: hypersuggestibility, loss of critical judgment, confabulation, and memory cementing.[3] *Id.* It then listed a number of factors the trial court should scrutinize in determining trustworthiness, including but not limited to:

(1) the level of training in the clinical uses and forensic applications of hypnosis by the person performing the hypnosis;

(2) the hypnotist's independence from law enforcement investigators, prosecution, and defense;

(3) the existence of a record of any information given or known by the hypnotist concerning the case prior to the hypnosis session;

(4) the existence of a written or recorded account of the facts as the hypnosis subject remembers them prior to undergoing hypnosis;

(5) the creation of recordings of all contacts between the hypnotist and the subject; the presence of persons other than the hypnotist and the subject during any phase of the hypnosis session, as well as the location of the session;

(6) the appropriateness of the induction and memory retrieval techniques used; the appropriateness of using hypnosis for the kind of memory loss involved;

(7) the existence of any evidence to corroborate the hypnotically-enhanced testimony;

(8) the presence or absence of overt or subtle cuing or suggestion of answers during the hypnotic session. *Zani,* 758 S.W.2d at 243–44.

After considering the totality of the circumstances, *Zani* instructs that if the trial court finds by clear and convincing evidence that hypnosis neither rendered the witness's posthypnotic memory untrustworthy nor substantially impaired the ability of the opponent fairly to test the witness's recall by cross-examination, the evidence should be admitted. *Id.*

### *Zani* and *Kelly*

The State's appeal rests on the premise that when the Court of Criminal Appeals overruled the *Frye* "general acceptance" test[4] for admissibility of scientific evidence in *Kelly v. State,* 824 S.W.2d 568, 572–73 (Tex.Crim.App.1992), it also impliedly overruled *Zani.* Thus, the State argues, the trial court committed error in relying upon *Zani's "Frye*-based" analysis to exclude J.E.'s testimony.[5] We disagree for the following reasons.

First, *Zani* is a highly specific, detailed discussion of a narrowly defined question:

---

**3.** Hypersuggestibility refers to the hypnotized person's state of increased suggestibility in which her disassociated attention is constantly sensitive and responsive to cues from the hypnotist. Loss of critical judgment means the hypnotized person's inability to make a mental evaluation of her ideas, images, and feelings. Confabulation is a phenomenon where the hypnotized person creates memory perceptions in an unconscious effort to please the hypnotist and believes the fabricated memories are real. Memory cementing means the hypnotized person becomes convinced the confabulation is an accurate memory. *See Zani v. State,* 767 S.W.2d 825, 835–36 (Tex.App.-Texarkana 1989, pet. ref'd).

**4.** *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923).

**5.** The *Frye* test required that " 'while courts will go a long way in admitting expert testimony deduced from a well recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.' " *Zani,* 758 S.W.2d at 239 (quoting *Frye,* 293 F. at 1014). This is commonly known as the "general acceptance" test. *Kelly* summarized its new test thusly: "[U]nder Rule 702 the proponent of novel scientific evidence must prove to the trial court, by clear and convincing evidence and outside the presence of the jury, that the proffered evi-

the admissibility of hypnotically-enhanced testimony in a criminal prosecution. It recognizes the peculiarly hybrid quality of this evidence; hypnotically-enhanced testimony is neither scientific evidence presented by an expert, nor is it simply factual evidence presented by a witness. Rather, as the *Zani* court acknowledged, "testimony that is dependent upon hypnosis cannot be logically dissociated from the underlying scientific technique" and should not be treated as purely an issue of weight and credibility. *Zani*, 758 S.W.2d at 241. Recognizing that this sort of evidence is peculiarly subject to taint by many subconscious factors, nevertheless the court declined to adopt a *per se* exclusionary rule. *Zani* then set up its own particularized set of demanding factors to be applied in just these cases. In doing so, it relies not so much on *Frye* as on a Colorado opinion that had earlier tackled the problem. *See Zani*, 758 S.W.2d at 243–44 (quoting *People v. Romero*, 745 P.2d 1003, 1021 (Colo. 1987)). Although *Zani* certainly recognizes *Frye* (properly so, as *Frye* was then the benchmark), the framework it developed is neither *Frye* nor *Kelly*, but simply *Zani.*

Second, *Kelly* itself cites and relies on *Zani*, adopting the latter's heightened burden of persuasion for all proffers of novel scientific evidence under Tex.R.Crim. Evid. 702. *Kelly*, 824 S.W.2d at 573 ("Although *Zani* was a pre-rules case, we believe that its reasoning on this issue remains persuasive."). This approving language not only fails to support the State's argument that *Kelly* impliedly overrules *Zani*, it strongly

suggests the opposite, that *Zani* remains the law.

Finally, in several post-*Kelly* opinions, courts of appeals have used *Zani's* analysis to determine the admissibility of post-hypnotic testimony, without discussion of any impact *Kelly* might have upon its detailed framework for assessing this troublesome area. Perhaps more importantly, none of these cases have been criticized or overturned by the Court of Criminal Appeals. *See Sanchez v. State*, 1999 WL 644710 (Tex.App.-Austin 1999, pet. ref'd) (not designated for publication); *Hughes v. State*, 7 S.W.3d 880, 882 (Tex.App.-Amarillo 1999, no pet.); *Fitts v. State*, 1998 WL 17741, at *3–4 (Tex.App.-Amarillo 1998, pet. ref'd) (not designated for publication); *Soliz v. State*, 961 S.W.2d 545 (Tex.App.-San Antonio 1997, pet. ref'd).[6] These courts did not find the new *Kelly* standard to have vitiated *Zani's* authority, nor do we.

For these reasons, we conclude the trial court correctly applied *Zani* in ruling upon the admissibility of J.E.'s hypnotically-enhanced testimony. The State does not challenge the trial court's application of the *Zani* analysis to the facts here, and we therefore make no comment on that issue.

### Conclusion

The trial court's order excluding J.E.'s identifications of Medrano is affirmed. The case is remanded for further proceedings consistent with this opinion.

---

dence is relevant. If the trial court is so persuaded, then the evidence should be admitted for the jury's consideration, unless the trial court determines that the probative value of the evidence is outweighed by some factor identified in Rule 403." *Kelly*, 824 S.W.2d at 573.

**6.** Neither *Sanchez* nor *Fitts* has been designated for publication. We do not cite these cases as authority, but as illustrative of our point that post-*Kelly* courts have relied upon *Zani* without any suggestion from the Court of Criminal Appeals that they applied an outdated standard.