In The



Court of Appeals


 

Ninth District of Texas at Beaumont


 

____________________



NO. 09-03-214 CR


____________________



ROBERT LYNN STUBBS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Court Cause No. 02-04-02370-CR






MEMORANDUM OPINION



 Robert Lynn Stubbs pleaded guilty to murder; trial was to the jury on punishment. 
He appeals from the jury's assessment of thirteen years incarceration in the Texas
Department of Criminal Justice -- Institutional Division. 

 Stubbs argues the trial judge committed fundamental error by commenting on the
weight of the evidence and on whether Stubbs would testify at the punishment phase of the
trial. Although he testified and did not rely on his right to remain silent, he says the trial
court's improper comment required him to testify, because the jury would have held his
silence against him. 

 Prior to the selection of the jury, the trial judge made the following remarks to the
venire: 

 The alleged victim in the case is Robert Wylie. There were seventeen
apparent witnesses to the event. My understanding is that it happened at
McKnight's Western Wear on the east side of Conroe, Texas, on the south
part of Loop 336. . . . [I]t cuts across 105 east, and just a short distance
to the south on Loop 336 is McKnight's Western Wear, fairly well-known
little commercial location over there. About 1:30 . . . in the afternoon of
that day apparently broad daylight. My understanding, there were two
vehicles involved and Mr. Wylie, the alleged victim, was in one, and Mr.
Stubbs was in the other, and Mr. Wylie ended up being shot to death. He
did get inside the western wear store apparently before he collapsed and
expired there on the spot. Apparently in the car or present as a witness was
a lady by the name of Tracie Stubbs. Tracie Stubbs at that time, as I
understand it, was Mr. Robert Stubbs' wife. She was assoicated with Mr.
Wylie, the alleged victim. So I'll let the facts and the evidence speak for
itself, but it's my understanding there was a relationship between Mr. Wylie
and Mrs. Stubbs, and Mrs. Stubbs was married to Robert Stubbs at the time. 
Maybe there was an estrangement between them. There was also I think the
daughter, 12-year-old daughter of Mr. Wylie, the alleged victim, who was
also present as a witness. 

 So I am perhaps going a little further than I should, but the reason that
I go that far with you is that if you have personal knowledge about the case,
you are involved in a situation where you have talked about these facts with
someone, we have to know that right away to see whether or not you can
still be fair and impartial even though you have some personal knowledge
about the case. So let me know which of you are familiar with that little
summary I have given you about the apparent facts in the case. So . . . 
there was a little news coverage about the case, but it was quite sometime
ago. And this case, some of you live near McKnight's or worked at
McKnight's, or you happen to know any of the parties I have mentioned, so
that's the kind of thing we need to know right up front. So tell me again if
anybody knows the parties in the case. We have such a large community
now that it's not unusual that the jury panel doesn't know. If it turns out that
you know some of the witnesses in the case or some of the information
comes back to you as you having read it, that doesn't disqualify you, but if
it turns out you know a witness in the case, it would be well for you to so
indicate.

 They'll probably tell you who the possible witnesses are, or the
expected witnesses are while they speak with you . . . the lawyers talk to you
about jury selection. I have told you something about the range of the
punishment. Remember it's 5 to 99, or life, and a fine up to $10,000.

 . . . .

 The defendant has another important right I need to mention to you,
he doesn't have to testify, because like everybody else in this room, he's
entitled to the protection of the 5th Amendment, which says you have the
right to remain silent, you can't be incriminated. So the prosecutors can't
make him take the witness stand. And I suggest to you that you might
expect to hear from the defendant, but once again, he doesn't have to. If
they decide not to put Mr. Stubbs on the stand, you don't necessarily
disregard it because you know it happened, but at the same time you can't
say I'm going to sentence him to at least 50 years because he didn't testify. 
You can't use his silence against him. Now I am telling you right now not
to worry much in this regard. 

 I don't want you to worry about anything, but I don't want to forget
to tell you he's got a right to remain silent. Like I say, it may very well be
that he's going to present his side of the story, which often makes people
more comfortable, including myself, but just keep this in mind. If you have
got something in your mind that if he doesn't testify I'm giving the
maximum punishment, we can't do that. You can't use his silence against
him, that's what the Constitution says as applied through our Supreme Court
and so forth. I've talked to you for a long time and I apologize if I've taken
too long. How about comfort? We'll go to recess before we start hearing
from the lawyers. 


 A trial judge shall not at any stage of the proceeding prior to the return of the
verdict make any comment calculated to convey to the jury the judge's opinion of the case. 
 Tex. Code Crim. Proc. Ann. art. 38.05 (Vernon 1979). A comment on an accused's
failure to testify violates the accused's federal and state constitutional privileges against
self-incrimination and the right to not be compelled to testify. See Bustamante v. State,
48 S.W.3d 761, 764 (Tex. Crim. App. 2001). The general rule is that counsel must object
to the trial judge's remarks in order to preserve error. Blue v. State, 41 S.W.3d 129, 131
(Tex. 2000). However, the reviewing court may take note of "fundamental errors
affecting substantial rights although they were not brought to the attention of the court." 
Id. (quoting Tex. R. Evid. 103(d)). Stubbs did not object to the trial judge's remarks. He
argues the comments amounted to fundamental error under Blue and Tex. R. Evid. 103(d). 
 In his summary of the evidence for the venire, the trial judge may have gone, as he
stated, "a little further than [he] should," but the trial court's summary does not involve
disputed facts. In its pertinent points, the evidence the State and defendant later presented
to the jury mirrors the trial judge's comments. The remarks are a summary, not a
comment on the weight of the evidence, and they do not convey the trial court's opinion
as to what punishment should be meted out to Stubbs. The trial judge explained the
purpose of his evidence summary to the members of the venire: he wanted them to be able
to determine whether they had any "personal knowledge about the case[.]" A trial court
has broad discretion in maintaining control and expediting the trial. See Jasper v. State,
61 S.W.3d 413, 421 (Tex. Crim. App. 2001). Here, the court attempted to efficiently
manage the voir dire proceedings by giving a summary of the evidence to assist the venire
members in determining whether they had any knowledge about the parties or the events
in the case. 

 The trial judge's comments, even if improper, did not rise to the level of
fundamental error evidenced in Blue. They did not taint the presumption of innocence;
Stubbs had already pleaded to Wylie's murder. And the remarks did not deny the accused
the basic right to an impartial jurist. The article 38.05 right to prohibit the judge from
commenting on the weight of the evidence or conveying his opinion of the case is
forfeitable by inaction. See Moore v. State, 907 S.W.2d 918, 922-23 (Tex. App.--
Houston [1st Dist.] 1995, pet. ref'd). Appellant was not excused from the requirement to
object to preserve the error. Because he did not object to the judge's summary of the
evidence, the issue is waived. See Tex. R. App. P. 33.1.

 Stubbs also says the trial judge's comments violate the Fifth Amendment to the
United States Constitution and Article I, § 10 of the Texas Constitution. (1) The Fifth
Amendment prevents a person from being compelled to be a witness against himself in any
criminal matter, and a defendant retains the right to remain silent during sentencing. See
Mitchell v. United States, 526 U.S. 314, 327, 329-330, 119 S.Ct. 1307, 143 L.Ed.2d 424
(1999). Stubbs says the remarks left the defense "with no other option but to put their
client on the stand."

 Stubbs testified his wife Tracie left him in late December 2001. Depressed by her
departure, he bought a gun and considered suicide. Yet he was still hoping for
reconciliation. He described for the jury his feelings of anger after he spotted Wylie
driving a vehicle in which Tracie Stubbs was a passenger. Stubbs and Tracie were the
owners of that vehicle. Although Stubbs knew Tracie was living with Wylie, Stubbs'
sighting of Wylie and Tracie in the Stubbs' vehicle angered Stubbs. He followed the car
to the store, reached for his gun, exited his pickup, approached Wylie, and shot Wylie
while Wylie was seated in the car. 

 It is apparent from the record that defense counsel's trial strategy was the
presentation of "sudden passion" evidence to mitigate punishment. To establish he acted
under the influence of sudden passion, Stubbs presented testimony from himself, the
psychologist who interviewed him, and various character witnesses. The jury found
sudden passion.

 A defendant's right not to testify may be waived only if the waiver is knowing,
intelligent, and voluntary; and defendant waives this right when he voluntarily takes the
stand. See Brown v. State, 617 S.W.2d 234, 236 (Tex. Crim. App. 1981); Brumfield v.
State, 445 S.W.2d 732, 735 (Tex. Crim. App. 1969) (opinion on rehearing); Birdsong v.
State, 82 S.W.3d 538, 541-544 (Tex. App.--Austin 2002, no pet.). In Birdsong, the court
of appeals said, "The salient issue is whether the record before us, when viewed in its
entirety, satisfies this Court that appellant's punishment hearing testimony was given
knowingly, voluntarily, and intelligently." Id. at 544. The court, in viewing the record
in its entirety, found the defendant was not compelled to testify in the trial to the court, but
voluntarily did so. Id. The court concluded the "record clearly reflects a punishment-hearing strategy of seeking the district court's leniency." Id. at 544. 

 Here, there was no harm from the trial court's error. The record reflects
appellant's strategy was to testify and mitigate punishment. Although others testified to
his normally calm nature, only Stubbs described his anger immediately before the
shooting. There is nothing in the record which would suggest Stubbs did not testify
voluntarily, knowingly, and intelligently. To the contrary, it is apparent he testified to
establish the sudden passion issue. We conclude he was not compelled to testify. Issue
one is overruled.

 In issue two Stubbs argues the trial court erred in admitting three photographs: 
Exhibits 2K, 2L, and 4A. Exhibit 2K shows the position of the deceased's body inside the
western store; neither of the victim's gunshot wounds is visible in the picture. Photo 2L
also shows Wylie's body while still in the store; the victim's shirt is pulled up and the
gunshot wound to the abdomen is visible. Stubbs objected to photos K and L as irrelevant
and more prejudicial than probative. Exhibit 4A is an autopsy picture of the victim; the
abdominal wound is visible. Stubbs objected that 4A was irrelevant, repetitive of other
exhibits, and more prejudicial than probative.

 Photographs must assist the jury. See Erazo v. State, No. 2206-02, 2004 WL
1353463, at *3 (Tex. Crim. App. June 16, 2004). Also, photos must not be more
prejudicial than probative. See Tex. R. Evid. 403. "If there are elements of a photograph
that are genuinely helpful to the jury in making its decision, the photograph is inadmissible
only if the emotional and prejudicial aspects substantially outweigh the helpful aspects." 
Erazo, 2004 WL 1353463, at *3. The photographs here are probative of the manner of
the victim's death. In depicting the body's position at the crime scene and the location and
angle of wounds as seen by the medical examiner at the autopsy, the photographs do not
have the ability to impress the jury in some irrational, yet indelible way. See Escamilla
v. State, No. 74494, 2004 WL 1462077, at *10 (Tex. Crim. App. June 30, 2004). The
evidence assisted the jury in making its decision on punishment. Issue two is overruled. 

 In issue three, Stubbs says the trial court erred by excluding part of the testimony
of Stubbs' two expert witnesses. Rule 702 governs the admissibility of expert testimony:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise." Tex. R. Evid. 702. We review a trial court's exclusion of expert
testimony under an abuse of discretion standard. See Weatherred v. State, 15 S.W.3d 540,
542 (Tex. Crim. App. 2000). We must uphold the trial court's ruling if the ruling was
within the zone of reasonable disagreement and the ruling was correct on any theory of law
applicable to the case. See Sauceda v. State, 129 S.W.3d 116, 120 (Tex. Crim. App.
2004). Prystash v. State, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999). 

 Appellant says the trial court did not allow Gerald Ortom, who had worked as a
parole and probation officer, to testify that murderers on probation are easier to supervise
than other probationers and are less likely to commit more crimes. Stubbs had the burden
of showing that the testimony was relevant and reliable. See Weatherred, 15 S.W.3d at
542; see also Sexton v. State, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). He attempted
to carry that burden by simply offering Ortom's testimony and nothing else, though
the trial judge expressly offered him the opportunity to "come back" with
supporting evidence for the opinion. Weatherred, 15 S.W.3d at 542. Ortom
offered no criteria or data by which, even out of his own experience, he arrived at
his broad conclusions about murderers on probation. 

 The reliability of expert testimony based on the "soft sciences" may be
established by showing that (1) the field of expertise involved is a legitimate one,
(2) the subject matter of the expert's testimony is within the scope of that field,
and (3) the expert's testimony properly relies upon or utilizes the principles
involved in that field. Weatherred, 15 S.W.3d at 542. While experience alone
may provide, in some cases, a sufficient basis for an expert's testimony, there still
must be evidence of the reliability of the opinion arising out of that experience. 
See Perez v. State, 113 S.W.3d 819, 834 (Tex. App.--Austin 2003, pet. ref'd)
(reliability based on experience alone); see also State v. Medrano, 127 S.W.3d 781,
785-86 (Tex. Crim. App. 2004) (Unique nature of scientific evidence derived from
soft sciences does not vitiate the requirement of reliability.). Appellant offered no
evidence that the expert's testimony properly relied on or utilized principles or
studies from within his field of expertise. We conclude the trial court did not err
in excluding Ortom's opinion on these issues. 

 The trial judge also excluded Dr. Carmen Petzold's opinion testimony on
whether Stubbs was acting under sudden passion. Appellant says the exclusion
was error. See Tex. R. Evid. 704. But even if the trial court erred, there is no
harm. Petzold testified to details establishing Stubbs was severely depressed and
suicidal and was under emotional and mental stress on February 23, 2002, the day
of the murder. She also testified Stubbs had spent his whole life "minimizing
problems, minimizing hurts, minimizing upsets, pushing it away . . . ." 

 I think it's kind of a cumulative affect [sic]. You have this
minimizing that he's done his whole life denying window problems,
and Mr. Stubbs also has what's called a pattern of over-controlled
hostility. That means that most of the time he under reacts to
normal upset, but once in a while that he will over react and he won't
even really know because of this tendency to minimize and deny that
he's over reacting or getting ready to have an over reaction. He's
blind sided by the level of stress that's building up in him. He
doesn't see it coming because of the minimization. 

Dr. Petzold's description of Stubbs' mental state allowed the jury to conclude that
Stubbs acted under the influence of sudden passion.

 Appellant also argues the trial court erred because it excluded Dr. Petzold's
opinion that appellant would be a good candidate for community supervision. 
The State objected that no proper predicate and foundation had been laid for the
testimony. Dr. Petzold, a licensed psychologist, described her work experience. 
She had testified numerous times in criminal cases. Her experience with criminal
offenders was primarily with sex offender treatment programs for adults and
juveniles. She did not indicate she had ever dealt with offenders on community
supervision or parole. The party proffering the expert witness bears the burden
of showing the witness is qualified on the specific matter in question. Wyatt v.
State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000) (citing Penry v. State, 903 S.W.2d
715, 762 (Tex. Crim. App. 1995)). Ortom, another defense expert witness, was
allowed to testify Stubbs was a good candidate for probation. We hold the trial
court did not abuse its discretion in finding the proper foundation had not been
laid for Petzold's testimony on the probability of Stubbs' success on probation. 
Issue three is overruled. 



 The judgment is affirmed. 

 PER CURIAM

 
Submitted on August 24, 2004

Opinion Delivered October 6, 2004

Do Not Publish


Before McKeithen, C.J., Burgess, and Gaultney, JJ.

 
1. Appellant has not separately argued or briefed the Texas constitutional violation. 
Therefore, we do not address it. See Johnson v. State, 853 S.W.2d 527, 533 (Tex. Crim.
App. 1992).