IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1919-02






THE STATE OF TEXAS, Appellant



v.



MATTHEW MEDRANO, Appellee





ON PETITION FOR DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


EL PASO COUNTY






 Price, J., delivered the opinion of the Court, in which Meyers, Womack,
Johnson, Keasler, and Hervey, J.J., joined. Womack, J., filed a concurring opinion. 
Cochran, J., filed a concurring opinion, in which Keller, P.J. and Holcomb, J., joined.


O P I N I O N 


 

 This case comes before us on petition for discretionary review by the State of Texas
to decide whether Zani v. State, 758 S.W.2d 233 (Tex. Crim. App. 1988), was overruled by
Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992). In Zani, a case based on the general
acceptance standard of Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), we held that
hypnotically enhanced testimony is admissible in Texas. (1) Because Kelly overruled the general
acceptance standard and Texas courts' reliance on Frye, the State argues that Zani is implicitly
overruled by Kelly. We conclude that, although based on the general acceptance standard
expressed in Frye, the Zani case, in developing a highly specific framework to ensure that
hypnotically enhanced testimony offered in a particular case is reliable, is not overruled,
either explicitly or implicitly, by Kelly or its progeny. 

 This appeal originally arose from the trial court's exclusion of hypnotically enhanced
testimony from the only eyewitness in a capital murder case. In the initial appeal, the court of
appeals, citing State v. Roberts, 940 S.W.2d 655, 658 (Tex. Crim. App. 1996), held that it did
not have jurisdiction to consider the trial court's exclusion of the evidence. State v. Medrano,
987 S.W.2d 600, 603-04 (Tex. App.-El Paso 1999). We granted the State's petition for
discretionary review, reversed the court of appeals' decision, overruled Roberts, and remanded
the appeal for consideration on the merits. State v. Medrano, 67 S.W.3d 892, 902-03 (Tex.
Crim. App. 2002). On remand, the court of appeals affirmed the trial court's exclusion of the
evidence holding that the trial court correctly applied Zani in ruling on the admissibility of
hypnotically enhanced testimony. State v. Medrano, 86 S.W.3d 369, 373 (Tex. App.-El Paso
2002). We granted the State's petition to determine whether Zani was overruled by Kelly. We
affirm.

 As aptly expressed by the Eighth Court of Appeals, our opinion in Zani dealt with a
"highly specific, detailed discussion of a narrowly defined question." Medrano v. State, 86
S.W.3d 369, 372 (Tex. App. - El Paso 2002). That question was "whether hypnotically induced
testimony is admissible in Texas." Zani, 758 S.W.2d at 234 (internal citations omitted). In
analyzing the admissibility of hypnotically enhanced testimony, we worked within the
framework of the applicable law at the time: Frye v. United States. (2) Judge Clinton, writing the
opinion for this Court, stated: "we consider Frye 'applicable because lay testimony that is
dependent upon hypnosis cannot be logically dissociated from the underlying scientific
technique.'" Zani, 758 S.W.2d at 241 (quoting Contreas v. State, 718 P.2d 129, 134 (Alaska
1986)). A discussion of hypnosis and hypnotically enhanced testimony included a discussion
of Frye, the case that governed the admissibility of scientific evidence. 

 In Zani, while applying Frye and discussing the "general acceptance" of hypnosis and
hypnotically enhanced testimony in the medical and legal community, we recognized that the
accuracy of hypnotically enhanced testimony was questionable. We stated, "To the extent that
ordinary disabilities of perception, memory, and articulation may be amplified by hypnosis,
it will result in recall less accurate than would ordinarily be expected." Id. at 242 (internal
quotation marks omitted). We reasoned that because hypnosis may amplify perception,
memory and articulation in the witness's testimony, and because the amplification may go
undetected, the best solution would be to adopt a per se exclusionary rule. Ibid. 

 Despite the lack of general acceptance among the scientific community, we did not
impose a per se rule with Zani. Rather, citing the United States Supreme Court decision in
Rock v. Arkansas, 483 U.S. 44 (1987), we "decline[d] to adopt an exclusionary rule prohibiting
hypnotic recall in every case." Zani, 758 S.W.2d at 243. Although the law governing
scientific evidence, the general acceptance standard of Frye, militated in favor of a per se
exclusionary rule, the Supreme Court's decision in Rock "rendered such a position untenable." 
Id. at 242. See Rock, 483 U.S. 44 (holding a per se exclusionary rule banning hypnotically
refreshed testimony of defendants testifying on their own behalf unconstitutional under the
Fifth, Sixth, and Fourteenth Amendments of the United States Constitution). Yet the question
of the reliability of hypnotically enhanced testimony remained.

 With Zani, the Court provided a mechanism to allow for the admission of hypnotically
enhanced testimony and at the same time to ensure that this admitted testimony was reliable. 
The solution was the Zani standard. Under the Zani standard, the Court instituted procedural
safeguards to protect against "the four-prong dangers of hypnosis: hypersuggestibility, loss
of critical judgment, confabulation, and memory cementing." Id. at 244 (internal quotation
marks omitted). The Court adopted a non-exclusive list of factors from People v. Romero,
745 P.2d 1003, 1017 (Colo. 1987), (3) which a trial court is to consider in deciding whether
hypnotically enhanced testimony is admissible in a particular case. Zani, 758 S.W.2d at 244. 
The Zani standard permits admission of hypnotically enhanced testimony "[i]f, after
consideration of the totality of the circumstances, the trial court should find by clear and
convincing evidence that hypnosis neither rendered the witness's posthypnotic memory
untrustworthy nor substantially impaired the ability of the opponent fairly to test the witness's
recall by cross[-]examination." Ibid. By requiring clear and convincing evidence of the
trustworthiness and the lack of impairment of a witness's hypnotically enhanced testimony, the
aim of this Court was to ensure the reliability of the evidence admitted.

 Since Zani was decided in 1988, the law governing the admissibility of scientific
evidence in Texas criminal courts has evolved from the "general acceptance" standard
enunciated in Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), to the current standard
presented in Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992). In Kelly, we stated that
the general acceptance standard was no longer valid for two reasons. First, the Frye standard
was no longer valid because, with the 1986 adoption of Texas Rule of Criminal Evidence 702
(stating "If scientific, technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education, may testify thereto in the form of an
opinion or otherwise."), there was "no textual basis . . . for a special admissibility standard for
novel scientific evidence." Kelly, 824 S.W.2d at 572. Second, the Frye standard was no
longer valid because "scientific evidence may be shown reliable even though not yet generally
accepted . . . ." Ibid. Because the Frye-based general acceptance standard was no longer valid,
the Court presented a new standard in Kelly.

 In determining the admissibility of novel scientific evidence, the threshold question
asked by both Rule 702 and Kelly was, "whether the testimony will help the trier of fact
understand the evidence or determine a fact in issue." Ibid. (citing Duckett v. State, 797
S.W.2d 906, 910 (Tex. Crim. App. 1990)); see also Texas Rule of Evidence 702 (stating that
evidence should be admitted, "[i]f scientific, technical, or other specialized knowledge will
assist the trier of fact to understand the evidence or to determine a fact in issue."). In Kelly,
we reasoned that "the trial court's first task is to determine whether the testimony is
sufficiently reliable and relevant to help the jury in reaching accurate results," because
"'[u]nreliable . . . scientific evidence simply will not assist the [jury] to understand the evidence
or accurately determine a fact in issue.'" Kelly, 824 S.W.2d at 572 (quoting K. Kreiling,
Scientific Evidence: Toward Providing the Lay Trier With the Comprehensible and Reliable
Evidence Necessary to Meet the Goals of the Rules of Evidence, 32 Ariz. L. Rev. 915, 941-42 (1990)). Kelly states that "before novel scientific evidence may be admitted under Rule
702, the proponent must persuade the trial court, by clear and convincing evidence, that the
evidence is reliable and therefore relevant." Id. at 573 (internal citations omitted). The
reliability of novel scientific evidence is the cornerstone of our opinion in Kelly.

 Proving reliability requires that the proponent establish: "(a) [that] the underlying
scientific technique [is] valid; (b) [that] the technique applying the theory [is] valid; and (c)
[that] the technique [has] been properly applied on the occasion in question." Ibid. (internal
citations omitted). Additionally, the Court cited seven factors that a trial court may consider
which could affect reliability. (4)
 This standard was expanded by the Court through Hartman v.
State, 946 S.W.2d 60, 63 (Tex. Crim. App. 1997), in which the Court held that the standard
established in Kelly applies to all scientific evidence offered under Rule 702. See also Nenno
v. State, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998). However, we soon recognized that the
criterion used to prove reliability by clear and convincing evidence under Kelly may become
cumbersome under certain circumstances.

 In Nenno v. State, the Court warned that the "general principles announced in Kelly (and
Daubert [v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)]) apply [to
nonscientific expert testimony], but the specific factors outlined in those cases may or may
not apply depending on the context." Nenno, 970 S.W.2d at 560. Although Kelly remains the
law after Nenno, "[w]hen addressing fields of study aside from the hard sciences, such as the
social sciences or fields that are based primarily upon experience and training as opposed to
the scientific method, Kelly's requirement of reliability applies but with less rigor than to the
hard sciences." Id. at 561. Through Nenno, the Court refined the Kelly framework to provide
a more adequate means of analyzing the reliability of scientific evidence based on soft
sciences. 

 In Nenno, we were not attempting "to develop a rigid distinction between 'hard' and
'soft' sciences, or nonscientific testimony." Id. at 560-61. However, Nenno offered three
inquiries more appropriately tailored to analyze soft sciences where "the validity of a 'theory'
or 'technique'. . . may be roughly accurate but somewhat misleading." Ibid. When soft
sciences are at issue, the trial court should inquire: "(1) whether the field of the expert's
testimony is within the scope of that field, (2) whether the subject matter of the expert's
testimony is within the scope of that field, and (3) whether the expert's testimony properly
relies upon and / or utilizes the principles involved in the field." Id. at 561. These questions
may be more appropriate when dealing with soft sciences because "hard science methods of
validation, such as assessing the potential rate of error or subjecting a theory to peer review,
may often be inappropriate for testing the reliability of fields of expertise outside the hard
sciences." Ibid. However, because the objective of both Kelly and Nenno was to ensure the
reliability of expert testimony and scientific evidence, Nenno "[did] not categorically rule out
employing [the Kelly] factors in an appropriate case." Id. at 561 n.9. Rather, the objective in
Nenno was to provide a mechanism to ensure the reliability in the more amorphous sciences. 


 Reliability remains the cornerstone, of not just Kelly, but also of all of the scientific
evidence cases. By requiring a threshold of general acceptance in the field before scientific
evidence would be admissible, the court in Frye was seeking to ensure the reliability of novel
scientific evidence. Frye, 293 F. at 1014. Moving beyond the general acceptance test in Frye,
our objective in Kelly was to provide a three-prong framework that would ensure that evidence
derived from a scientific source was reliable despite lacking in general acceptance in the
relevant scientific community. Kelly, 824 S.W.2d at 573. 

 Yet the Kelly test, while readily applicable to hard sciences based primarily on the
scientific method, did not provide an adequate test of reliability to soft sciences "based
primarily upon experience and training." Nenno, 970 S.W.2d at 561. In recognition of this
limitation, we offered a similar three-prong test but made it an "appropriately tailored
translation of the Kelly test" to areas of soft science and non-traditional sources of expert
testimony. Ibid. We noted that the unique nature of scientific evidence derived from soft
sciences does not vitiate the Kelly requirement of reliability. Ibid. In Weatherred v. State,
15 S.W.3d 540 (Tex. Crim. App. 2000), we made clear that despite the apparently relaxed
standard created for "soft sciences" in Nenno, "[u]nder Rule 702, the proponent of scientific
evidence must show, by clear and convincing proof, that the evidence he is proffering is
sufficiently relevant and reliable to assist the jury in accurately understanding other evidence
or in determining a fact in issue." Weatherred, 15 S.W.3d at 542 (citing Nenno v. State, 970
S.W.2d 549, 560-61 (Tex. Crim. App. 1998); Hartman v. State, 946 S.W.2d 60, 62-63 (Tex.
Crim. App. 1997); Jordan v. State, 928 S.W.2d 550, 553-55 (Tex. Crim. App. 1996); Kelly
v. State, 824 S.W.2d 568, 572-73 (Tex. Crim. App. 1992)). Regardless, of the type of
scientific evidence, reliability remains crucial to admissibility.

 The primacy of reliability is as paramount to the admission of scientific evidence today
as it was when we decided Zani. In 1988, when the Court adopted the Zani standard, it sought
to ensure that all hypnotically enhanced testimony that was admitted by the Texas criminal
courts was reliable. The Zani standard, although relying on Frye, followed the 1986
promulgation of the Texas Rules of Criminal Evidence and, more specifically, Rule 702. The
Zani case was tried in 1981 and as such was a pre-Rules case. By the time the appeal reached
this Court the new Rules of Criminal Evidence were already in effect. Zani v. State, 679
S.W.2d 144, 149 (Tex. App.-Texarkana 1984). Consequently, when the appeal was decided,
although not pursuant to the new Rules, the Court was no doubt aware of the importance of
reliability under the newly enacted Rule 702 governing the admissibility of expert testimony
and scientific evidence. Reliability was and remains a central theme of Rule 702 (5) because the
rule requires that any expert be able to "assist the trier of fact to understand the evidence or
to determine a fact in issue," Texas Rule of Evidence 702, and because "'[u]nreliable. . .
scientific evidence simply will not assist the [jury] to understand the evidence or accurately
determine a fact in issue.'" Kelly, 824 S.W.2d at 572 (quoting K. Kreiling, Scientific
Evidence: Toward Providing the Lay Trier With the Comprehensible and Reliable Evidence
Necessary to Meet the Goals of the Rules of Evidence, 32 Ariz. L. Rev. 915, 941-42 (1990)). 
Although, we stated in Nenno that, with regard to the soft sciences, "Kelly's requirement of
reliability applies but with less rigor than to the hard sciences," this does not mean that
scientific evidence derived from the soft sciences is always afforded less rigorous scrutiny. 
Zani is illustrative.

 With Zani, the Court created a standard for the trial courts to apply in determining the
admissibility of hypnotically enhanced testimony - evidence based on a soft science. The
Court recognized in Zani that the reliability of hypnotically enhanced testimony is especially
in question due to the undetected amplification of disabilities in perception, memory and
articulation in a witness's testimony. Although this standard was created in 1988, predating
both Kelly and Nenno, the objective of reliability remains constant in all three opinions. In
Kelly and Nenno, frameworks were developed to ensure the reliability of novel scientific
evidence in the broad categories of hard and soft sciences, respectively. Zani, on the other
hand, is a standard that applies in a soft science situation where a narrowly tailored framework
was created to ensure the reliability of a particular scientific technique. 

 The Zani standard provided the Texas trial courts with the appropriate framework to
protect against the four-prong dangers of hypnosis. These four dangers, hypersuggestibility,
loss of critical judgment, confabulation, and memory cementing, are dangers that directly
undercut the reliability of a witness's hypnotically enhanced testimony. The Zani standard
minimizes these dangers and, consequently, ensures the reliability of the testimony. Certainly,
the Zani standard is more rigorous than the standards applied in Kelly or Nenno. However, our
opinion in Zani exhaustively analyzed both the dangers and solutions inherent in hypnotically
enhanced testimony. 

 The standard created by the Court is a highly specific framework applicable specifically
to the admissibility of hypnotically enhanced testimony. Turning to a broader standard under
Kelly and Nenno, while seeking the same objective of reliability realized by the current
standard in Zani, would do a disservice to the trial courts. To adopt a broader standard that was
created without hypnotically enhanced testimony in mind in place of a narrowly defined
standard specifically designed to ensure the reliability of hypnotically enhanced testimony
would be imprudent. Because this highly specific framework is a narrowly defined standard
that seeks to ensure the reliability of a specific type of scientific evidence, and because Zani
is faithful to the primary objective of ensuring reliability in the admission of scientific
evidence, we conclude that Zani remains the standard to be applied by Texas trial courts in
assessing the reliability and determining the admissibility of hypnotically enhanced testimony. 
The decision of the court of appeals is affirmed.



Delivered: February 4, 2004

Publish


1. Throughout this opinion we use the term "hypnotically enhanced testimony " rather than
"hypnotically induced testimony." We note, however, that our learned brethren in Zani used these
terms interchangeably. 
2. The Court noted, "Practically every jurisdiction which has reviewed the question of the
admissibility of hypnotically enhanced testimony since 1980 has at least addressed the claim that such
testimony should be excluded because it fails to meet the criterion set out in Frye v. United States, 54
App. D.C. 46, 293 F. 1013 (D.C. Cir. 1923)." Zani, 758 S.W.2d at 239.
3. The factors adopted in Zani were: 

 the level of training in the clinical uses and forensic applications of hypnosis
by the person performing the hypnosis; the hypnotist's independence from
law enforcement investigators, prosecution, and defense; the existence of
a record of any information given or known by the hypnotist concerning
the case prior to the hypnosis session; the existence of a written or
recorded account of the facts as the hypnosis subject remembers them
prior to undergoing hypnosis; the creation of recordings of all contacts
between the hypnotist and the subject; the presence of persons other than
the hypnotist and the subject during any phase of the hypnosis session, as
well as the location of the session; the appropriateness of the induction and
memory retrieval techniques used; the appropriateness of using hypnosis
for the kind of memory loss involved; and the existence of any evidence
to corroborate the hypnotically-enhanced testimony.

Zani, 758 S.W.2d at 243-44 (quoting People v. Romero, 745 P.2d 1003, 1017 (Colo.
1987)).
4. These factors are:

 (1) the extent to which the underlying scientific theory and technique are
accepted as valid by the relevant scientific community, if such a community
can be ascertained; (2) the qualifications of the experts testifying; (3) the
existence of literature supporting or rejecting the underlying scientific
theory and technique; (4) the potential rate of error of the technique; (5)
the availability of other experts to test and evaluate the technique; (6) the
clarity with which the underlying scientific technique can be explained to
the court; and (7) the experience and skill of the person(s) who applied
the technique on the occasion in question.

Kelly, 824 S.W.2d at 573 (citing 3 J. Weinstein & M. Berger, Weinstein's Evidence para. 702[03]
(1991)).

5. Reliability is central to both the former Texas Rule of Criminal Evidence 702 and the current
Texas Rule of Evidence 702.