COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-044-CR

 

 

MICHAEL RAY DENTON                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 158TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

INTRODUCTION








A jury convicted Appellant
Michael Ray Denton of aggravated sexual assault and assessed his punishment at
twenty years=
confinement.  In five issues, Appellant
contends that the trial court erred by (1) excluding the testimony of expert
witness Leon Peek, Ph.D., (2) excluding the testimony of witness Lisa Denton,
(3) refusing to submit the lesser included offense of assault in the jury
charge, (4) admitting the testimony of sexual assault nurse examiner Patricia
Sedge, and (5) admitting outcry testimony in violation of article 38.072 of the
Texas Code of Criminal Procedure.  We
affirm.

BACKGROUND

The complainant in this case
is C.D., who was six-years-old at the time of trial.  One morning in April 2004, Margaret Radcliff
was serving breakfast at an elementary school when C.D. came through the
cafeteria line, gave Ms. Radcliff a Ahorrified, scared look,@ and pointed to a hickey on his neck. 
Ms. Radcliff took C.D. to the school counselor=s office, and Laura Rangale, C.D.=s teacher, was called to the office as well.  Ms. Rangale testified that when she walked
into the office, C.D. began to cry.  When
she asked him what was wrong, C.D. replied that his dad said that they would
take him away if he told her what happened. 
Ms. Rangale again asked C.D. what happened, and C.D. replied that he,
his little brother, and his dad were sleeping in the bed the night before when
his dad rolled over and began sucking on his neck.  C.D. said that he tried to stop his dad, but
his dad was asleep and would not stop. 
C.D. denied that his father put his mouth or hands anywhere else on his
body, and he denied that his father had touched his little brother.  C.D. said that the next morning, he told his
dad that he was going to tell, and his dad said that he could tell, but they
would not believe him.  








On April 20, 2004, Dena Hill,
an investigator for Child Protective Services at the time, interviewed
C.D.  She testified that she observed a
hickey on C.D.=s neck.  C.D. told her that he got it by his dad
kissing his neck.  C.D. also told her
that his dad had pulled down his underwear and put Ahis wee-wee in his bottom.@  Using a diagram, C.D.
indicated where the bottom was and that a Awee-wee@ meant the
penis.  C.D. said that this had happened
on two separate occasions, one time at his dad=s trailer and the other at his Granny=s. 

Detective Shane Kizer, who
had watched Ms. Hill interview C.D., believed a further investigation was
warranted; therefore, he contacted Appellant, C.D.=s father, who agreed to go to the police department and give a
statement.  The interview was videotaped,
and the videotape was admitted into evidence and played for the jury at
trial.  During the interview, Appellant
denied sexually assaulting C.D.  However,
Appellant also stated that his son was not a liar and had no reason to
lie.  After the interview, Detective
Kizer took Appellant home and then contacted a sexual assault nurse examiner to
conduct a sexual assault exam on C.D. 








Sexual Assault Nurse Examiner
Patricia Sedge performed the sexual assault exam on C.D.  She noted that C.D. had a bruise on his
neck.  C.D. told her that his dad had
kissed him on the neck.  He also told her
that his dad had had sex with him on two different occasions.  Using diagrams, C.D. indicated that Asex@ meant the
penis touching the bottom.  After talking
to C.D., Ms. Sedge then performed a physical exam.  She noted C.D. had point tenderness at the
6:00 position, indicating some underlying tissue trauma at the bottom part of
the anus.  Ms. Sedge testified that this was
consistent with C.D.=s
history.  Ultimately, Ms. Sedge testified
that she Arecorded
sexual assault by history, normal exam, no genital trauma visualized on
physical exam.@ 

C.D. also testified at
trial.  He stated that he remembered
going to school with a hickey on his neck. 
He had gotten it by his dad sucking on his neck.   C.D. also testified that his dad had Arubbed his pee-pee on my butt.@  He stated that this had
happened before at his Granny=s.  

A jury convicted Appellant of
aggravated sexual assault and assessed his punishment at twenty years= confinement.  The trial judge
entered judgment accordingly.  Appellant
filed this appeal.   

DR. PEEK=S TESTIMONY

In his first issue, Appellant
contends that the trial court erred by excluding the testimony of expert
witness Leon Peek, Ph.D.  The State
responds, however, and we agree, that Dr. Peek=s testimony was properly excluded because the opinion he wanted to
give the jury was essentially that the victim=s testimony was not credible. 








We review a trial court=s decision to admit or exclude scientific expert testimony under an
abuse of discretion standard.  Sexton
v. State, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002); Weatherred v. State,
15 S.W.3d 540, 542 (Tex. Crim. App. 2000). 
Thus, we must uphold the trial court=s ruling if it was within the zone of reasonable disagreement.  Sexton, 93 S.W.3d at 99; Weatherred,
15 S.W.3d at 542.

Under Texas Rule of Evidence
702, an expert witness may testify if his scientific, technical or other
specialized knowledge will assist the trier of fact in understanding the
evidence or in determining a fact issue. 
Tex. R. Evid. 702.  However, the expert=s testimony must aid the trier of fact and not supplant its
determination.  Schutz v. State,
957 S.W.2d 52, 59 (Tex. Crim. App. 1997). 
Expert testimony does not assist the trier of fact when it constitutes a
direct opinion on the truthfulness of a child complainant=s allegations.  Id.; Yount  v. State, 872 S.W.2d 706, 711, n.8 (Tex.
Crim. App. 1993).  Further, expert
testimony that a child complainant=s allegations are the result of manipulation or fantasy is
inadmissible.  See Schutz, 957
S.W.2d at 70.  Such evidence never
assists the jury because the jury is just as capable as the expert of drawing
the conclusions involved.  Id. at
70-71.








Here, after C.D. testified,
the trial court conducted a hearing outside the presence of the jury to
determine the admissibility of Dr. Peek=s testimony.  At the hearing,
Dr. Peek testified that although he could not form an opinion about whether
C.D.=s testimony was truthful, he opined that C.D. had memorized his
testimony and that he was reciting a story that he had learned in previous
interviews.  As the basis for his
opinion, Dr. Peek referred to C.D.=s testimony at trial, noting that it was Avery remembered or mechanical@ as C.D. would answer different questions with the same words.[2]  








As the State points out, the
court of criminal appeals in Schutz discussed Alearned memory@ under the
heading of manipulation.  Id. at
60-61.  And the court held that evidence
that a child complainant=s
allegations are the result of manipulation is inadmissible.  Id. at 70.  Here, Dr. Peek=s opinion was not merely that C.D. exhibited characteristics
associated with one who was reciting a story that he had memorized from
previous interviews, nor was he merely going to testify that C.D. was easily
manipulated.  Cf. id. at 73
(holding expert testimony that complainant did not exhibit behaviors of
manipulation admissible because it did not constitute a direct comment on the
truth of the complainant=s
allegations); Vasquez v. State, 975 S.W.2d 415, 418-19 (Tex. App.CAustin 1998, pet. ref=d) (holding testimony admissible that complainant=s statement had characteristics commonly found in descriptions of
actual events).  Rather, Dr. Peek=s proffered testimony expressed a direct opinion on whether C.D. had
in fact memorized his testimony and was reciting a story that he had learned in
previous interviews.  See Schutz,
957 S.W.2d at 73 (holding expert=s testimony was direct comment on truthfulness of complainant=s allegations when he testified that the Aless likely explanation@ was that complainant had been the subject of manipulation).  Therefore, we hold that although Dr. Peek
explained that he was not giving an opinion on C.D.=s truthfulness, his testimony was nevertheless a direct comment on the
truthfulness of C.D.=s
allegations and, thus, properly excluded. 
We overrule Appellant=s first issue.

LISA DENTON=S TESTIMONY








In his second issue,
Appellant argues that the trial court erred by excluding Lisa Denton=s testimony that C.D. had been previously sexually abused by his
uncle.  To preserve a complaint for our
review, however, a party must have presented to the trial court a timely
request, objection, or motion that states the specific grounds for the desired
ruling if they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).








In this court, Appellant
contends that Lisa Denton=s testimony
about C.D.=s prior
abuse by his uncle was admissible because it was necessary to rebut medical
evidence offered by the State, citing Texas Rule of Evidence 412(b)(2)(A), and
because it is constitutionally required to be admitted, citing Texas Rule of
Evidence 412(b)(2)(E).  However,
Appellant raised neither argument before the trial court nor were his
complaints apparent from the context in which they occurred.[3]  See Tex.
R. App. P. 33.1(a)(1).  Therefore,
we conclude that Appellant did not preserve his complaint for appellate
review.  See Eaves v. State, 141
S.W.3d 686, 691 (Tex. App.CTexarkana 2004, pet. ref=d) (holding appellant=s constitutional issues under rule 412(b)(2)(E) were forfeited because
appellant did not raise argument before the trial court).  We overrule Appellant=s second issue.

LESSER INCLUDED OFFENSE

In his third issue, Appellant
contends that the trial court erred by refusing to submit his proposed jury
instructions in the charge.  The
indictment alleged in pertinent part that Appellant did Aintentionally or knowingly cause the anus of said [C.D.], a child
younger than 14 years of age who was not the spouse of said defendant, to
contact the sexual organ of the defendant.@  See Tex. Penal Code Ann. ' 22.021(a) (Vernon Supp. 2005). 
Appellant argues that the jury should have been given the option of
finding him guilty of assault rather than aggravated sexual assault.[4]









We use a two-pronged test to
determine whether a defendant is entitled to an instruction on a lesser
included offense.  Rousseau v. State,
855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert. denied, 510 U.S. 919
(1993); Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App.
1981).  First, the lesser included
offense must be included within the proof necessary to establish the offense
charged, and, second, some evidence must exist in the record that would permit
a jury to rationally find that if Appellant is guilty, he is guilty only of the
lesser offense.  Salinas v. State,
163 S.W.3d 734, 741 (Tex. Crim. App. 2005); 
Rousseau, 855 S.W.2d at 672-73; Royster, 622 S.W.2d at
446.  Although Appellant asserts that the
first prong of the test is undisputed and, therefore, satisfied, the State
contends that Aunder the
circumstances of this case, assault is not a lesser-included offense of
aggravated sexual assault.@   

Texas Code of Criminal
Procedure article 37.09 provides that an offense is a lesser included offense
if

(1) it is established by proof of the same or less than all the facts
required to establish the commission of the offense charged;

 

(2) it differs from the offense charged only in the respect that a
less serious injury or risk of injury to the same person, property, or public
interest suffices to establish its commission;

 

(3) it differs from the offense charged only in the respect that a
less culpable mental state suffices to establish its commission; or

 

(4) it consists of an attempt to commit the offense charged or an
otherwise included offense.

 








Tex.
Code Crim. Proc. Ann. art. 37.09 (Vernon 1981).  Whether an offense is a lesser included
offense of the charged offense is a determination that must be made on a
case-by-case basis because a lesser included offense is defined both in terms
of the offense charged and the facts of the case.  Bartholomew v. State, 871 S.W.2d 210,
212 (Tex. Crim. App. 1994); Day v. State, 532 S.W.2d 302, 315-16 (Tex.
Crim. App. 1976) (op. on reh'g).  The
controlling factor is whether the lesser included offense could be proven by
the same facts necessary to establish the offense charged. Mello v. State,
806 S.W.2d 875, 878 (Tex. App.CEastland 1991, pet. ref=d).  In other words, the issue
is whether proof of the charged offense actually included proof of the lesser
included offense.  See Bartholomew,
871 S.W.2d at 212; Broussard v. State, 642 S.W.2d 171, 173 (Tex. Crim.
App. 1982).








A person
commits the offense of assault if he intentionally, knowingly, or recklessly
causes bodily injury to another.  Tex. Penal Code Ann. ' 22.01 (Vernon Supp. 2005).  In
the present case, aggravated sexual assault does not require proof of bodily
injury.  See id. ' 22.021(a).  Under these
indictments, the State was required to prove Acontact.@  Evidence of contact does not constitute
evidence of bodily injury.  Therefore,
because this additional fact must be proved for assault, but not for the
charged offense, assault is not a lesser included offense in this case under
article 37.09(1).  Tex. Code Crim. Proc. Ann. art.
37.09(1) (Vernon 1981); see Wilson v. State, Nos. 12-02-00042-CR,
12-02-00043-CR, 2003 WL 21771766, at *7 (Tex. App.CTyler July 31, 2003, no pet.) (mem. op.) (holding assault not a lesser
included offense of aggravated sexual assault or sexual assault when, under the
indictments, the State was only required to prove penetration, not bodily
injury).  Even though there may be
evidence in the record that Appellant inflicted bodily injury on C.D., that
evidence is immaterial to our determination. See Jacob v. State, 892
S.W.2d 905, 908 (Tex. Crim. App. 1995) (holding Afacts required@ language in
article 37.09(1) means evidence legally required to prove elements as alleged
in indictment, not evidence State presents to prove elements).

Neither can
assault be a lesser included offense of the charged offense under any other
provision of article 37.09 because (1) the offenses differ in ways other than
simply in injury or risk of injury, (2) the requirement of a less culpable
mental state is not the only difference between the offenses, and (3) assault
is not merely an attempt to commit the charged offense.  See Tex.
Code Crim. Proc. Ann. art. 37.09(2)-(4). 


For these
reasons, we hold that the trial court did not err by refusing to submit the
lesser included offense of assault in the jury charge.  We overrule Appellant=s third issue.

PATRICIA
SEDGE=S TESTIMONY








In his
fourth issue, Appellant argues that the trial court erred by admitting the
testimony of sexual assault nurse examiner Patricia Sedge.  Specifically,
Appellant contends that Ms. Sedge=s testimony was inadmissible because it was not shown to be reliable.[5]  We disagree.

As
previously stated, we review a trial court=s decision to admit or exclude scientific expert testimony under an
abuse of discretion standard.  Sexton,
93 S.W.3d at 99; Weatherred, 15 S.W.3d at 542.  Thus, we must uphold the trial court=s ruling if it was within the zone of reasonable disagreement.  Sexton, 93 S.W.3d at 99; Weatherred,
15 S.W.3d at 542.








Texas Rule
of Evidence 702 provides that if scientific, technical, or other specialized
knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise.  Tex. R. Evid. 702.  The threshold determination in an inquiry
into the admissibility of expert testimony under rule 702 is whether the
testimony is helpful to the trier of fact. 
Emerson v. State, 880 S.W.2d 759, 763 (Tex. Crim. App.), cert.
denied, 513 U.S. 931 (1994).  For
such testimony to be helpful, the basis of the testimony must be reliable.  Id.; Kelly v. State, 824 S.W.2d
568, 572 (Tex. Crim. App. 1992).  In Kelly,
the court provided three criteria that must be satisfied for novel scientific
evidence to be considered reliable:  (1)
the underlying scientific theory must be valid; (2) the technique applying the
theory must be valid; and (3) the technique must have been properly applied on
the occasion in question.  Kelly,
824 S.W.2d at 573.  Additionally, the
court cited seven factors which could affect reliability:  (1) the extent to which the underlying
scientific theory and technique are accepted as valid by the relevant
scientific community, if such a community can be ascertained; (2) the
qualifications of the expert(s) testifying; (3) the existence of literature
supporting or rejecting the underlying scientific theory and technique; (4) the
potential rate of error of the technique; (5) the availability of other experts
to test and evaluate the technique; (6) the clarity with which the underlying
scientific technique can be explained to the court; and (7) the experience and
skill of the person(s) who applied the technique on the occasion in question.  Id.  








The standard
established in Kelly was expanded by the court through Hartman v.
State, in which the court held that the Kelly standard applies to
all scientific evidence offered under rule 702. 
946 S.W.2d 60, 63 (Tex. Crim. App. 1997); see also State v. Medrano,
127 S.W.3d 781, 784 (Tex. Crim. App. 2004).  The court soon recognized,
however, that the criteria used to prove reliability under Kelly became
cumbersome under certain circumstances.  Medrano,
127 S.W.3d at 785; see also Nenno v. State, 970 S.W.2d 549, 561 (Tex.
Crim. App. 1998), overruled on other grounds by State v. Terrazas, 4
S.W.3d 720 (Tex. Crim. App. 1999).  

In Nenno,
the court warned that although the general principles announced in Kelly
apply to nonscientific expert testimony, the specific factors outlined in those
cases may or may not apply depending on the context.  Nenno, 970 S.W.2d at 560.  Although Kelly remains the law after Nenno,
the court stated in Nenno that when addressing fields of study aside
from the Ahard@ sciences, such as social sciences or fields that are based primarily
upon experience and training as opposed to the scientific method, Kelly=s requirement of reliability applies but with less rigor than it does
to the hard sciences.  Medrano,
127 S.W.3d at 785 (citing Nenno, 970 S.W.2d at 561).  








Although the
court in Nenno was not trying to develop a rigid distinction between Ahard@ sciences, Asoft@ sciences,
or nonscientific testimony, the court nevertheless offered three inquiries more
appropriately tailored to analyze soft sciences in which the validity of a
theory or technique may be roughly accurate but somewhat misleading.  Id. (citing Nenno, 970 S.W.2d
at 560-61).  When soft sciences are at
issue, the trial court should inquire 
(1) whether the field of expertise is a legitimate one, (2) whether the
subject matter of the expert=s testimony is within the scope of that field, and (3) whether the
expert=s testimony properly relies upon and/or utilizes the principles
involved in the field. Nenno, 970 S.W.2d at 561.   However, because the objective of both Kelly
and Nenno was to ensure the reliability of expert testimony and scientific
evidence, Nenno did not categorically rule out employing the Kelly
factors in an appropriate case.  Medrano,
127 S.W.3d at 785 (citing Nenno, 970 S.W.2d at 561 n.9).

Here, Ms.
Sedge=s testimony is more akin to a soft science because her testimony is
based primarily upon experience and training as opposed to a scientific
method.  See id. (citing Nenno,
970 S.W.2d at 561); see also Yanez v. State, No. 03-00-00576-CR, 2002 WL
90822, at *5 (Tex. App.CAustin Jan.
25, 2002, no pet.) (not designated for publication) (AWhile nursing is a scientific profession in some respects, Smith=s testimony in this cause was not based on scientific principles or
theory, but on technical or specialized knowledge.@).  Therefore, we are guided by
the Nenno factors set forth above. 
See Medrano, 127 S.W.2d at 785 (citing Nenno, 970 S.W.2d
at 561).








Ms. Sedge
testified that she has been a registered nurse for eight years. She is also
certified by the Office of the Attorney General of Texas as a sexual assault
nurse examiner for both children and adults. 
To become a sexual assault nurse examiner, Ms. Sedge was trained by the
Attorney General=s Office for
92 clinical hours and 64 classroom hours, half of which were dedicated
exclusively to children.  During that time,
she worked side by side with the sexual assault nurses at Cook Children=s Medical Center.  Since she has
become certified, she has conducted around 70 exams, about half of which were
performed on pediatric patients.  She is
a member of the International Association of Forensic Nurses, and she also
participates in continuing training and peer reviews in the field of sexual
assault nursing.  This testimony supports
the conclusion that sexual assault nursing is a legitimate field of
expertise.  See Yanez, 2002 WL
90822, at *5 (holding expert=s testimony supported the conclusion that emergency and sexual assault
nursing are legitimate fields of expertise when expert testified that she was a
certified emergency care nurse, she completed her training for certification as
a sexual assault nurse, and she had conducted over four hundred sexual assault
exams during the five years preceding trial). 
There is no real question here that Ms. Sedge=s testimony was within the scope of that field.  And Ms. Sedge testified that during her
examination, she utilized all the principles she had learned from her training
as a sexual assault nurse examiner and had not deviated from any of the
standards accepted in the field. 
Furthermore, she stated that her conclusions were based on her training
and experience.  Thus, Ms. Sedge=s testimony relied upon and utilized the principles involved in sexual
assault nursing.








For these
reasons, we hold that the trial court did not abuse its discretion by admitting
the testimony of sexual assault nurse examiner Patricia Sedge.  We overrule Appellant=s fourth issue.

OUTCRY
TESTIMONY

In his fifth
issue, Appellant contends that the trial court erred by admitting  outcry testimony in violation of article
38.072 of the Texas Code of Criminal Procedure. 
Specifically, Appellant argues that the trial court erred by admitting
the outcry testimony of witnesses Laura Rangale and Dena Hill without first
conducting a proper reliability hearing as to the statements.  

To allow admission of a child=s outcry statement
under article 38.072, the trial court must conduct a hearing outside the
presence of the jury and find the statement reliable based on its time,
content, and circumstances.  Tex. Code Crim. Proc. Ann. art. 38.072,
' 2(b)(2) (Vernon
2005).  The phrase Atime, content, and
circumstances@ refers to Athe time the child=s statement was
made to the outcry witness, the content of the child=s statement, and
the circumstances surrounding the making of that statement.@ Broderick v.
State, 89 S.W.3d 696, 699 (Tex. App.CHouston [1st
Dist.] 2002, pet. ref=d) (quoting MacGilfrey v. State, 52
S.W.3d 918, 921 (Tex. App.CBeaumont 2001, no
pet.)). 








During trial, but outside the presence of
the jury, the State suggested to the court that before the outcry statements
could be admitted, Athe Court has to have a hearing outside
the presence of the jury to determine that the statements are admissible.@  The State then proposed that it would tell
the court what the witnesses were going to say and if the court wanted it to
put on the witnesses, that would be fine. 
The State then summarized the testimony that each witness would provide,
including how C.D. knew each witness, when he spoke to each witness about the
assault, and what C.D. told each of them about the assault.[6]  After the summary, the prosecutor stated, AI believe these
statements are clearly reliable.  They=re close in terms
of times and place when the child made the outcry.@  Furthermore, the State expressed to the court
that if it wanted the State to call a witness, then the State was prepared to
do so.  Appellant made a hearsay
objection both after the State summarized the outcry testimony outside the
presence of the jury and, when the jury was present, before each witness
testified as to what C.D. told them. The trial court overruled Appellant=s objections and
granted the State=s motion to admit the outcry testimony. 








Appellant contends that there was no Ahearing@ as required by
the statute but, at most, only a bench conference.  We disagree. 
We conclude that even though no witnesses were called to testify, there
was an adequate hearing outside the presence of the jury in which the trial
court found that the statements were reliable based on their time, content, and
circumstances.  See Tex. Code Crim. Proc. Ann. art. 38.072,
' 2(b)(2) (Vernon
2005); see also Black=s Law Dictionary 737 (8th ed. 2004)
(defining a hearing as Aa judicial session, usu[ally] open to the
public, held for purposes of deciding issues of fact or of law, sometimes with
witnesses testifying@) (emphasis added).  Moreover, assuming that Appellant=s hearsay
objection also preserved a complaint about the adequacy of the hearing under
article 38.072, Appellant  cites no
authority, and we have found none, requiring the State to call witnesses to
testify at an article 38.072 hearing.  Article
38.072 merely states that the trial court must conduct a Ahearing@ outside the
presence of the jury and find the statement reliable based on its time,
content, and circumstances.  Tex. Code Crim. Proc. Ann. art. 38.072,
' 2(b)(2).          








Furthermore, even if the trial court did
abuse its discretion in admitting the outcry testimony, we conclude that any
error was harmless.  Nonconstitutional
error is not reversible if it does not affect an appellant=s substantial
rights.  Tex. R. App. P. 44.2.  A substantial right is affected when the error had a substantial and
injurious effect or influence in determining the jury=s verdict.  King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall v.
State, 961 S.W.2d 639, 643 (Tex. App.CFort Worth 1998, pet. ref=d).  A conviction should not be
overturned for such error if this court, after examining the record as a whole,
has fair assurance that the error did not influence the jury, or had but a
slight effect.  Duncan v. State,
95 S.W.3d 669, 672 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d) (citing Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998)).  Likewise, improper
admission of evidence is not reversible error if the same or similar evidence
is admitted without objection at another point in the trial.  Leday v. State, 983 S.W.2d 713, 718
(Tex. Crim. App. 1998); see Duncan, 95 S.W.3d at 672 (holding improper
admission of outcry testimony was harmless error because similar testimony was
admitted through complainant, pediatrician, and medical records). 








In this
case, several instances of similar testimony were developed and offered.  In addition to Ms. Rangale=s and Ms. Hill=s testimony,
C.D. testified at trial, without objection, that his dad had given him a hickey
by sucking on his neck and that Appellant had sexually abused him.  Further, Ms. Sedge noted that C.D. had a
bruise on his neck, and C.D. told her that his dad had kissed him on the neck
and had sex with him on two separate occasions.   

We conclude
that, in the context of the entire case against Appellant, any error by the
trial court in admitting the outcry testimony did not have a substantial or
injurious effect on the jury=s verdict and did not affect Appellant=s substantial rights.  See
King, 953 S.W.2d at 271.  We overrule
Appellant=s fifth
issue.

CONCLUSION

Having
overruled Appellant=s five issues,
we affirm the trial court=s judgment. 

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  July 27, 2006











[1]See Tex. R. App. P. 47.4.





[2]Dr.
Peek explained that as a child repeats the same story in response to multiple
interviews, he begins repeating the same words rather than referring to the
event itself.  Furthermore, Dr. Peek
explained that children begin to reinforce the version of the story that is
pleasing to the interviewer.  Because of
this, Dr. Peek testified, the child=s testimony becomes so Apackaged@ that
it needs other corroboration.  And in
that case, Dr. Peek stated, whether the child has been previously abused would
be of importance because (1) a child who had already been through a sexual
abuse interview would be very sophisticated sexually and (2) a young child=s
memory works in such a way that events often become combined.  Dr. Peek testified that from his review of
CPS documents, C.D. had an extensive prior history of sexual abuse. 





[3]The
State filed a motion in limine before trial requesting that the trial court
order Appellant to refrain from mentioning before the jury evidence of C.D.=s
sexual behavior with anyone other than Appellant.  The trial court granted the motion.  Subsequently, outside the presence of the
jury, Appellant explained that he intended to call Lisa Denton to discuss C.D.=s
sexual history, among other things.  The
State responded that the testimony was inadmissible under Texas Rule of Evidence
412.  Rule 412 disallows, with some
exceptions, evidence of specific instances of an alleged victim=s
past sexual behavior.  Tex. R. Evid. 412.  The rule applies when a child victim has been
the victim of a prior sexual assault.  See,
e.g., Matz v. State, 989 S.W.2d 419, 422-23 (Tex. App.CFort
Worth 1999), rev=d on other grounds, 14
S.W.3d 746 (Tex. Crim. App. 2000).  Appellant
then argued that it was part of his defense that C.D. was recounting nothing
more than what happened to him in 2002. 
The trial court indicated that the testimony was inadmissible, and
Appellant made an offer of proof. 
Appellant did not offer any other grounds for admitting the excluded
testimony when he made his offer of proof. 






[4]Appellant=s
proposed charge states in pertinent part: 
ANow,
if you find from the evidence beyond a reasonable doubt that on or about 18th
day of April, 2004, in Denton County, Texas, [Appellant] did intentionally or
knowingly cause bodily injury to [C.D.] by sucking on the neck, then you will
find the defendant guilty.@ 





[5]Within
his fourth issue, Appellant also summarily states that Ms. Sedge was merely
offered to improperly bolster C.D.=s testimony; however, he does
not argue, cite legal authority, or make specific record references regarding
any specific argument as to bolstering. 
Thus, we overrule his bolstering contention as inadequately briefed.  Tex. R.
App. P. 38.1(h).





[6]As
the State points out, the subsequent testimony of each witness corroborated the
prosecutors=
summary of what the testimony would be.